UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Shari M. Chambers,

          Plaintiff,

vs.                                          Case No.  3:11-cv-207-J-MCR

Commissioner of Social Security,

          Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 27, 2009, alleging a period of disability beginning May 25, 2006. (Tr. 122). The Social Security Administration denied this application initially and on reconsideration. (Tr. 10, 74-79). After a hearing, an Administrative Law Judge (the "ALJ") issued a decision on July 22, 2010, denying Plaintiff's application. (Tr. 23-69). The Appeals Council denied Plaintiff's request for review on January 19, 2011 (Tr. 1-5), rendering the ALJ's decision

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

final.  See 20 C.F.R. § 404.981.  Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision.  (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since May 26, 2006 due to an inability to sustain work activity at any exertional level as a result of back and lower extremity impairments. (Tr. 203-04).

### B.   Summary of Evidence Before the ALJ

Plaintiff was thirty-eight years old on the date of the ALJ's decision.  (Tr. 122). Plaintiff has a high school education and past relevant work experience as an ESE job coach, medical biller, and teacher's assistant.  (Tr. 136, 143).  Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[2]

On August 31, 2006, Plaintiff was seen for a neurosurgical consultation by Dr. Mark Spatola, M.D. following complaints of back pain with radiation down her right leg. A lumbar scan revealed a postlaminectomy down the right side along with a herniated disc at L5-S1 with disc bulging at L4-5.  (Tr. 210-11).  Dr. Spatola performed a right L5 hemilaminotomy and L5-S1 diskectomy on September 13, 2006.  (Tr. 247-48).  Dr. Spatola advised Plaintiff to avoid lifting and bending immediately after the procedure, but two months later, he indicated that she needed to lose weight and walk for exercise. (Tr. 207, 245).

---

[2]The Court will focus on the records pertaining to Plaintiff's back and lower extremity impairments, as they are primarily at issue here.

On March 7, 2007, Plaintiff sought pain management treatment from Dr. Arkam Rehman, M.D. Dr. Rehman noted numbness and tingling in her lower back and right leg and constant low back pain. (Tr. 218-19). Dr. Rehman diagnosed Plaintiff with postlaminectomy syndrome with lumbar biomechanical facet related pain and probable L5-S1 radiculopathy. (Tr. 217). Dr. Rehman provided lumbar facet blocks on March 9, 2007 and an epidural steroid injection on March 16, 2007. (Tr. 213-14).

Plaintiff sought pain management treatment from Dr. John B. Hunt, M.D. beginning on January 21, 2008. (Tr. 271). Dr. Hunt also provided treatment on February 8, 2008, March 7, 2008, March 19, 2008, March 26, 2008, April 22, 2008, and June 30, 2008. (Tr. 251-69). On February 8, 2008, it was noted that Plaintiff received excellent relief from sacral nerve blocks. (Tr. 252). While under Dr. Hunt's care, Plaintiff reported that her pain level was 75 to 80 percent improved. (Tr. 256, 263, 265).zs

On March 3, 2009, a physical consultative examination was performed by Dr. Lily Rocha, M.D. Dr. Rocha's examination revealed positive seated straight leg raises with significant paravertebral muscle spasms along the lumbar spine. (Tr. 300-01).

Dr. Colleen Thoms, D.O. began treating Plaintiff in December 2005.[3] (Tr. 308, 331). Dr. Thoms' records reflect treatment for a cold, a routine pap, abdominal pain, and complaints of being sick. (Tr. 327-29, 332). While her records mention complaints

---

[3]Both the ALJ and Plaintiff's counsel incorrectly referred to Dr. Thoms as Dr. Thomas. See (Doc. 13; Tr. 9-18).

of back pain, Dr. Thoms did not actually treat these complaints. Rather, she referred Plaintiff to other physicians for treatment. (Tr. 320, 324, 326).

Dr. Thoms completed a Physical Residual Functional Capacity Questionnaire on April 7, 2009. (Tr. 308-12). In this Questionnaire, Dr. Thoms diagnosed Plaintiff with diabetes mellitus, obstructive sleep apnea, and chronic lumbar pain. (Tr. 308). Dr. Thoms opined that Plaintiff could sit for 30 minutes at a time and stand for 5 minutes, could sit for less than 2 hours and stand/walk for less than 2 hours in an 8 hour work day, could lift 10 pounds rarely in a competitive work situation, and would be absent more than 4 days per month from work due to constant pain and fatigue. (Tr. 309-11).

On July 29, 2009, Dr. Donald Morford, M.D. reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. In said Assessment, Dr. Morford opined that Plaintiff was capable of performing a range of sedentary work. (Tr. 402-09).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she

does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 25, 2006, the alleged onset date. (Tr. 11). At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease and sleep apnea. (Tr. 11-12). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. 12-14). At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[4] to perform a limited range of sedentary work.[5] Specifically,

---

[4]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[5]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined
(continued...)

> [Plaintiff] can lift and carry ten pounds occasionally, stand and/or walk for two hours in an eight hour workday, sit for six hours in an eight hour workday taking normal breaks. [Plaintiff] is unlimited in her ability to push and pull within her weight limitations. [Plaintiff] may never climb ladders, ropes and scaffolds but may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] should avoid exposure to constant vibration and hazards.

(Tr. 14-17). In reaching Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting factors of her alleged symptoms not completely credible. (Tr. 16).

At the hearing, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypothetical questions posed, the VE testified Plaintiff could perform her past sedentary work as a billing clerk. (Tr. 17-18). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 18).

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of

---

[5](...continued)
as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.   Issues on Appeal

Plaintiff presents one issue on appeal.  Plaintiff contends the ALJ failed to properly evaluate the medical opinion evidence of Dr. Thoms, Plaintiff's treating physician.  (Doc. 13, pp. 7-19).

A treating physician's opinion will be granted controlling weight if it is consistent with other medical evidence and is well-supported by acceptable clinical and diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  Treating physicians are granted such

deference because they are most able to provide a detailed, longitudinal picture of the patient's medical status. Id. However, where some medical evidence is found to be inconsistent with the treating physician's opinion, the ALJ should give that opinion "substantial or considerable" weight unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997); accord 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005).

Here, Plaintiff's treating physician, Dr. Thoms, opined that she could sit for 30 minutes at a time and stand for 5 minutes, could sit for less than 2 hours and stand/walk for less than 2 hours in an 8 hour work day, could lift 10 pounds rarely in a competitive work situation and would absent more than 4 days per month from work due to constant pain and fatigue. (Tr. 309-11). The ALJ gave less weight to this assessment "because it was inconsistent with the medical and other evidence of record as well as [Plaintiff's] testimony." (Tr. 17).

With regard to Dr. Thoms' own treatment records, they fail to contain any restrictions or limitations and reflect nothing more than conservative treatment for routine complaints.[6] (Tr. 314-32, 447-50). Indeed, Dr. Thoms' records reflect treatment

---

[6]Plaintiff appears to contend that the ALJ did not properly consider the length, nature, and extent of her treatment. (Doc. 13, pp. 9, 11). However, the ALJ clearly stated that Plaintiff received treatment from Dr. Thoms since March 2006 for obstructive sleep apnea, diabetes mellitus, post laminectomy syndrome with lumbar pain, and radiculopathy. (Tr. 11).

for a cold, a routine pap, abdominal pain, and complaints of being sick. (Tr. 327, 328, 329, 332). While her records mention complaints of back pain, Dr. Thoms' did not actually treat these complaints. Rather, she referred Plaintiff to other physicians for treatment. (Tr. 320, 324, 326). Additionally, Plaintiff did not report any limitations in functioning. Although Dr. Thoms described Plaintiff's physical limitations, she failed to provide objective evidence to support the degree of limitations imposed. Thus, Dr. Thoms' assessment is inconsistent with both her medical records and the limited treatment she provided.[7]

Additionally, Plaintiff's own testimony is inconsistent with the limitations imposed by Dr. Thoms. An ALJ may not give a treating physician's opinion controlling weight if the claimant's testimony regarding her daily activities contradicts that opinion. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Plaintiff testified that, until the fall of 2009, she engaged in volunteer activities that were "like a full time job."[8] (Tr. 57). Specifically, until approximately 2007, Plaintiff acted as the "team mom" for her daughter's cheerleading team and her stepson's football and baseball teams. (Tr. 35, 57). From 2007 until 2009, she was the coordinator for all of the "team moms" for the

---

[7] The Court notes that the ALJ only found Plaintiff's degenerative disc disease and sleep apnea to constitute severe impairments, and Plaintiff did not challenge this finding. As such, Plaintiff has conceded that the additional diagnoses contained in Dr. Thoms' assessment were not severe, and therefore did not significantly limit her ability to perform basic work activities. See 20 C.F.R. § 404.1521(a).

[8] The Court recognizes that Plaintiff stopped this activity in the fall of 2009. However, the ALJ was charged with determining whether Plaintiff was disabled since her May 25, 2006 onset date. (Tr. 134). The ALJ's decision is dated July 22, 2010. Therefore, Plaintiff performed what she described as "like full time" work for all but approximately seven or eight months of the period at issue.

entire park.  (Tr. 35-36, 57-58).  As park coordinator, she planned fundraisers, collected money, counted money, insured that the children were safe, and oversaw the team moms for all of the park teams.  (Tr. 36).  She also drove her children and her mother to and from school and work every day which took 45 minutes each way, went grocery shopping, and attended most of her stepson's football games and all of his baseball games.  (Tr. 33-37).  Additionally, since her onset date, Plaintiff has driven to Biloxi on two occasions to go to the casinos; on another occasion, she drove to Ohio and; on yet another occasion, she went to Disney World.[9]  (Tr. 38).  Plaintiff also testified that she is able to take care of her personal needs, load and unload a dishwasher, do laundry and fold clothes, lift a gallon of milk, go out to eat, and go to the movies.  (Tr. 42-48).  Therefore, the Court finds Plaintiff's testimony is inconsistent with Dr. Thoms' assessment.

Furthermore, the remaining medical evidence of record is also inconsistent with Dr. Thoms' assessment.  No other treating physician has assessed any permanent restrictions or limitations.  In fact, Plaintiff has received treatment from three different specialists for her back impairment and none of them limited her activities.  Dr. Spatola, a neurosurgeon who performed a right side L5 hemilaminotomy and L5-S1 diskectomy in September 2006, advised Plaintiff to avoid lifting and bending immediately after the procedure, but two months later, he indicated that she needed to lose weight and walk for exercise.  (Tr. 207, 245).  Additionally, in March 2007, after Plaintiff reported

---

[9]Thus, one can fairly infer that Plaintiff is able to sit for longer than 30 minutes at a time and for more than two hours in a day.

increased pain, Dr. Rehman administered lumbar facet blocks bilaterally but never restricted Plaintiff's activities. (Tr. 215-16). Similarly, Dr. Hunt, who treated Plaintiff with sacral nerve blocks and epidural steroid injections from January 2008 until June 2008, did not restrict or limit Plaintiff's activities. While under Dr. Hunt's care, Plaintiff reported that her pain level was 75 to 80 percent improved and that she had been able to increase her daily activities to include yard work and walking through the mall.[10] (Tr. 256, 263, 265). These doctors, unlike Dr. Thoms, were specialists who treated Plaintiff's back impairment and did not assess limitations as a result of said impairment.[11]

With respect to Plaintiff's argument that the ALJ improperly relied on the opinions from the state agency disability experts, this argument is without merit. See (Doc. 13, pp. 17-18). While Plaintiff is correct that one of the two disability experts was not a doctor and therefore could not offer a medical opinion, the other disability expert, Dr. Morford, is a doctor. Therefore, the ALJ was free to consider Dr. Morford's assessment

---

[10]Plaintiff suggests that the ALJ improperly found that injections and nerve blocks administered by Dr. Hunt provided Plaintiff with relief. (Doc. 13, p. 16). However, contrary to Plaintiff's argument, the record shows that Plaintiff received pain relief from nerve blocks and injections from March 2007 through June 2008. See (Tr. 215-16, 251-69). Although Plaintiff complained of increased pain in June 2008, she also stopped seeing Dr. Hunt at that time and did not have any more injections. (Tr. 266). Thus, the evidence shows that the injections likely provided relief until Plaintiff stopped the treatment.

[11]Dr. Thoms is not an orthopedist, surgeon, or pain specialist. Rather, she is a primary care physician who focuses on women's health. This fact undermines Plaintiff's argument that the ALJ somehow erred by not considering specialization pursuant to 20 C.F.R. § 404.1527(d)(5).

that Plaintiff was capable of performing a range of sedentary work (Tr. 402-09).[12]  See 20 C.F.R. § 404.1527(f)(2).

The ALJ has the right to determine what weight he gives to medical source opinions, including opinions from treating physicians, and the regulations are clear that an ALJ is not always required to give great weight to a treating physician's opinion.  See 20 C.F.R. § 404.1527; see also Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) ("a treating physician opinion may be discounted when it is not accompanied by objective medical evidence").  In fact, the Eleventh Circuit has found that an ALJ's determination to give little weight to a treating physician's opinion is supported by substantial evidence when the ALJ articulates legitimate reasons for doing so.  See Philips, 357 F.3d at 1240.  Here, Dr. Thoms' opinion was inconsistent with her own treatment records, Plaintiff's testimony, treatment records from Drs. Spatola, Rehman, and Hunt, and Dr. Morford's review of the record.  Accordingly, the ALJ properly gave lesser weight to the physical restrictions assessed by Dr. Thoms.

## IV. CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42

---

[12] Although Plaintiff appears to suggest that the ALJ relied solely on Dr. Morford's assessment when he decided to give lesser weight to Dr. Thoms' opinion, this is not the case.  See (Doc. 13, pp. 17-18).  As shown above, the evidence of record as well as Plaintiff's own testimony was inconsistent with Dr. Thoms' opinion.

U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this   16th   day of March, 2012.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record